## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

**United States of America**

Case No. 07-cr-44-1-PB

v.

Opinion No. 2020 DNH 222

**Arthur Durham**

### MEMORANDUM AND ORDER

Defendant Arthur Durham moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) ("Section 3582(c)(1)(A)"), as amended by Section 603(b)(1) of the First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, § 603(b)(1), 132 Stat. 5194, 5239.  For the following reasons, I deny Durham's motion.

### I.   STANDARD OF REVIEW

Following its amendment by the First Step Act, the compassionate release statute, codified as Section 3582(c)(1)(A), provides that

> the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of [thirty] days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in . . . [18 U.S.C. §] 3553(a) [("Section 3553(a)")] to the extent that they are applicable . . . .

§ 3582(c)(1)(A).  The court may reduce a defendant's prison sentence if it finds that "extraordinary and compelling reasons

1

warrant such a reduction," id. § 3582(c)(1)(A)(i), and that

"such a reduction is consistent with applicable policy

statements issued by the Sentencing Commission," id.

§ 3582(c)(1)(A).

The Sentencing Commission's policy statement ("the policy

statement"), which was promulgated prior to the passage of the

First Step Act, provides as follows:

> Upon motion of the Director of the [BOP] under [Section 3582(c)(1)(A)], the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in [Section 3553(a)], to the extent that they are applicable, the court determines that —
>
> (1)  (A) Extraordinary and compelling reasons warrant the reduction; . . .
>
> (2) The defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
>
> (3)  The reduction is consistent with this policy statement.

U.S. Sentencing Guidelines Manual ("USSG") § 1B1.13 (U.S.

Sentencing Comm'n 2018).  The commentary to the policy statement

further explains what is meant by "extraordinary and compelling

reasons."  It states, in relevant part, that "[p]rovided the

defendant meets the requirements of subdivision (2),

extraordinary and compelling reasons exist," USSG § 1B1.13 cmt.

n.1, when "[t]he defendant is . . . suffering from a serious

physical or medical condition," id. § 1B1.13 cmt. n.1(A)(ii)(I).

District courts are divided on whether the policy statement

remains binding following the enactment of the First Step Act.

Cf. United States v. Fox, No. 2:14-cr-03-DBH, 2019 WL 3046086,

at *2 (D. Me. July 11, 2019) (collecting cases).  I am not aware

of any court that has chosen to disregard the policy statement

entirely.  I conclude, instead, that it "provides helpful

guidance on the factors that support compassionate release,

although it is not ultimately conclusive given the statutory

change."  Id. at *3.

## II.   BACKGROUND

In 2007, Durham pleaded guilty to four counts of Hobbs Act

robbery and two counts of conspiracy to commit Hobbs Act

robbery, in violation of 18 U.S.C. § 1951, and one count of use

of a firearm in furtherance of a crime of violence, in violation

of 18 U.S.C. § 924(c).  See Gov't's Objection to Def.'s Mot. for

Release, Doc. No. 48 at 1.  Between March and November of 2006,

Durham and an accomplice forcibly robbed a restaurant, two gas

stations, and a motel.  Id. at 6.  During the course of those

four robberies, the defendant at various times threatened that

he had a weapon, forcibly grabbed a cashier, and pulled a 9mm

handgun on a lobby attendant.  Id.

Durham's previous criminal activity was also serious and extensive.  It included a state conviction for criminal threatening, for which he was still on parole at the time of his arrest on these federal charges.  See Doc. No. 48 at 6.  He pleaded guilty to ten counts of burglary committed in 1984 and eleven counts of burglary committed in 1985.  See id.  He told law enforcement that he committed these burglaries to support his crack cocaine addiction.  See id. at 6-7.  Due to Durham's extensive criminal history, I sentenced Durham to a term of imprisonment of 192 months, a term significantly below the federal sentencing guideline recommendations at the time of his sentencing.  See Mot. for Compassionate Release, Doc. No. 46 at 1; Doc. No. 48 at 7.  He has served approximately 156 months of his sentence.  See Doc. No. 48 at 1-2.

Durham is currently incarcerated at United States Penitentiary ("USP") Terre Haute, Indiana.  See Doc. No. 46 at 2.  The BOP, which manages USP Terre Haute, has developed and implemented a multi-point plan to address the COVID-19 pandemic. See Doc. No. 48 at 2.  Under the plan, the BOP has implemented quarantine and isolation protocols, restricted inmate transfers, reduced overcrowding, limited group gatherings, introduced face mask distribution to intimates, and suspended visitation and tours, among other measures.  See id.  Despite these protocols, according to the BOP's website, as of December 29, there were

458 active cases of COVID-19 in the inmate population and 21

active cases among staff at this facility.[1]

Durham is fifty-five years old and suffers from asthma,

cirrhosis of the liver, Hepatitis B, Hepatitis C, hypertension,

chronic obstructive pulmonary disease ("COPD"), folate

deficiency anemia, gastritis, and hyperlipidemia.  See Doc. No.

46 at 3; Ex. A to Def.'s Mot. for Compassionate Release, Doc.

No. 46-1 at 21.  Citing his age and medical conditions, Durham

submitted a request for compassionate release to the BOP on

August 31, 2020.  See Ex. C to Mot. for Compassionate Release,

Doc. No. 46-3.  After the BOP failed to respond in the required

30-day period, Durham then filed this motion for compassionate

release on November 7, 2020, requesting a reduction in his

sentence to allow for his immediate release.  See Doc. No. 46 at

1.  I held a hearing on the motion on December 15, 2020.

### III. **DISCUSSION**

Durham argues that I should order his release because his

medical ailments, including COPD, asthma, hypertension, and

liver disease, place him at a high risk of severe illness for

COVID-19, and a reduction of his sentence would not undermine

Section 3553(a)'s sentencing factors.  See Doc. No. 46 at 3-8.

The government opposes Durham's motion.  See Doc. No. 48.

---

[1] *COVID-19 Cases*, BOP, https://www.bop.gov/coronavirus/index.jsp
(last visited Dec. 29, 2020).

Because the BOP failed to respond to his administrative appeal within thirty days, Durham has exhausted his administrative rights, and so his motion is properly before me under Section 3582(c)(1)(A).

Durham has met his burden of demonstrating that "extraordinary and compelling reasons" exist that would render him eligible for compassionate release, as conceded by the government.  See § 3582(c)(1)(A); Doc. No. 48 at 4-5.  According to the Centers for Disease Control and Prevention ("CDC"), COPD places individuals at an increased risk for severe illness if they contract COVID-19.[2]  Further, the CDC also warns that asthma, hypertension, and liver disease might place individuals at an increased risk for severe illness if they contract COVID-19.[3]  At fifty-five years old, Durham is not in the highest risk category due to his age, but his age does create additional risk for severe illness.[4]  On similar facts, this court and other district courts have found that COPD, in combination with other risk factors, including asthma, hypertension, and older age, justifies a finding of an "extraordinary and compelling reason."

---

[2] *People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Dec. 29, 2020).

[3] Id.

[4] *Older Adults*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Dec. 29, 2020).

See United States v. Dufresne, 2020 DNH 169, 2020 WL 5803224, at

*2 (D.N.H. Sept. 29, 2020) (collecting cases finding

"extraordinary and compelling circumstances" during COVID-19

pandemic for defendants with COPD and additional chronic

conditions); United States v. Eisenberg, 471 F. Supp. 3d 436,

440 (D.N.H. 2020) (citing United States v. Griggs, 462 F. Supp.

3d 610, 619 (D.S.C. 2020) (collecting cases granting

compassionate release to older individuals with multiple

preexisting health conditions)).  I therefore accept, as the

government concedes, that Durham's medical conditions increase

his relative risk of COVID-19-related complications.  Further,

given the high number of cases in his facility among both

inmates and staff, and the fact that this number has rapidly

increased in the last 30 days, I conclude that there is a high

risk of Durham contracting COVID-19 at USP Terre Haute.[5]

     However, I must also consider the sentencing factors under

Section 3553(a).  See § 3582(c)(1)(A).  The factors include the

nature and circumstances of the offense; the history and

---

[5] As I have previously stated, I also acknowledge that confirmed
cases are different from the number of actual cases.  See United
States v. Amarrah, 458 F. Supp. 3d 611, 618 (E.D. Mich. 2020)
("Zero *confirmed* COVID-19 cases is not the same thing as zero
COVID-19 cases. The Bureau of Prisons recently discovered this
when it found that 70 percent of the inmates it tested were
positive for the disease.").  However, Durham does not challenge
this statistic and has presented no evidence that the reported
number of cases substantially under-reports the actual number of
cases in the facility.

characteristics of the defendant; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from future crimes by the defendant; and the need to avoid unwarranted sentencing disparities.  See § 3553(a).  These factors do not support Durham's early release.

There is no doubt that Durham committed serious crimes.  He was involved in four separate robberies.  In two of the robberies, Durham and his accomplice threatened that they had a gun.  In a third robbery, Durham physically grabbed a cashier by his waist to forcibly push him towards the cash register.  In the last robbery, Durham pulled a handgun on a lobby attendant, physically threatening the attendant with the weapon.  These crimes occurred mere months after Durham was released following his incarceration on a state conviction for criminal threatening of a former girlfriend.  The sentence I originally imposed reflected the serious nature of Durham's offenses and was well below the federal sentencing guidelines at the time.  Reducing that sentence would not be consistent with the goals of sentencing, including promoting respect for the law, providing just punishment, deterring further criminal conduct, and protecting the public.  Accordingly, I conclude that the interests of justice would not be served if his sentence were reduced.

I recognize that Durham has made efforts to rehabilitate himself during the last few years of his incarceration and, for the past two years, has avoided citations for misconduct.  There are certainly signs that Durham has invested in his own rehabilitation and education.  He has completed a 40-hour drug program, as well as several ACE, recreational, and pre-release programs.  See Doc. No. 46 at 7.  Although he struggled with disciplinary infractions in the first several years of his incarceration, since 2014 his disciplinary citations have been relatively minor, aside from a citation in 2017 for introducing drugs into the facility.  See Doc. No. 48 at 8-9.  His conduct in prison in the past two years has been commendable.  At present, however, his efforts do not alter the fact that his sentence remains no greater than necessary to achieve the purposes of the sentencing statute.  Consideration of Section 3553(a)'s factors, therefore, weighs against granting any reduction in Durham's sentence.

Although I am denying Durham's motion for compassionate release, I do recommend his placement in a medium security facility as soon as it is safe to do so.

## IV.   CONCLUSION

For the foregoing reasons, Durham's motion for compassionate release (Doc. No. 46) is denied.

SO ORDERED.

/s/ Paul J. Barbadoro
Paul J. Barbadoro
United States District Judge

December 29, 2020

cc:  Aaron Gingrande, Esq.
     Jeffrey S. Levin, Esq.
     U.S. Marshal
     U.S. Probation